AO 248 (Rev. 08/20) ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/25/2023

UNITED STATES OF AMERICA

v.

VALENTYN BELAN

Case No. 1:19-cr-84

ORDER ON MOTION FOR
SENTENCE REDUCTION UNDER
18 U.S.C. § 3582(c)(1)(A)

(COMPASSIONATE RELEASE)

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☐ GRANTED

  ☐ The defendant's previously imposed sentence of imprisonment of _____ is reduced to _____. If this sentence is less than the amount of time the defendant already served, the sentence is reduced to a time served; or

  ☐ Time served.

  If the defendant's sentence is reduced to time served:

    ☐ This order is stayed for up to fourteen days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made,

and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended; or

☐ There being a verified residence and an appropriate release plan in place, this order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure the defendant's safe release. The defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel.  There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

☐ The defendant must provide the complete address where the defendant will reside upon release to the probation office in the district where they will be released because it was not included in the motion for sentence reduction.

☐ Under 18 U.S.C. § 3582(c)(1)(A), the defendant is ordered to serve a "special term" of ☐ probation or ☐ supervised release of _____ months (not to exceed the unserved portion of the original term of imprisonment).

☐ The defendant's previously imposed conditions of supervised release apply to the "special term" of supervision; or

☐ The conditions of the "special term" of supervision are as follows:

☐ The defendant's previously imposed conditions of supervised release are unchanged.

☐ The defendant's previously imposed conditions of supervised release are modified as follows:

☐ DEFERRED pending supplemental briefing and/or a hearing.  The court DIRECTS the United States Attorney to file a response on or before          , along with all Bureau of Prisons records (medical, institutional, administrative) relevant to this motion.

☒ DENIED after complete review of the motion on the merits.

☒ FACTORS CONSIDERED (Optional)

The Court has considered Valentyn Belan's application for compassionate release and its supporting materials, Dkt. No. 58 (the "Application"), as well as the materials presented to the Court in connection with his sentencing.  The Court recognizes that the "First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).  However, here the Court need not reach the question of whether Mr. Belan has met his burden to establish the existence of extraordinary and compelling reasons for his release because, having considered the factors set forth in 18 U.S.C. § 3553(a), the Court does not believe that a modification of Mr. Belan's sentence is appropriate at this time.  See United States v. Keitt, 21 F.4th 67 (2d Cir. 2021).

Mr. Belan's crime was extremely serious.  He engaged in scam that was "cinematic in scope and scale . . . ." Dkt. No. 43 ("Tr.") at 25:15-16.  He engaged in a sophisticated fraud that raked in over $20 million in proceeds from his victim.  Id. at 26:10-17.  Mr. Belan used some of

the proceeds of his crime to live the good life. His crime was successful, in that "while some amounts have been recovered here, a substantial amount of the proceeds of his crimes still rest in the hands of his family in the Ukraine." Id. at 26:18-21. In the Application, Mr. Belan touts the fact that Mr. Belan "has thus far made approximately $1.7 million in restitution payments . . . . [and] facilitated the return to his victim of a sapphire ring worth over $2 million dollars." Application at 29. But given that Mr. Belan was responsible for $22,107,243.72 in total losses, that leaves his victim still out over $18 million--$18 million that is not accounted for. The Government asserted that several of the bank accounts into which the proceeds of the fraud were sent were held by the defendant, Ms. Yudim, and the defendant's mother, Ms. Belan, who is discussed in the Application. PSR ¶ 94. After the defendant's arrest, over $500,000 was wired from the account held jointly on behalf of Mr. Belan and his mother. Id. Mr. Belan's mother had been living in Florida prior to Mr. Belan's arrest: she left the country immediately following Mr. Belan's arrest. Mr. Belan and his family pocketed large amounts of his victim's money and have not returned it. The nature of Mr. Belan's crime was at the time, and remains exceptionally serious. The Court observes that Mr. Belan's newly-retained counsel suggests that the nature of the crime, and the need for personal deterrence with respect to it, is somehow mitigated by the fact that much of the conduct associated with the criminal conduct took place abroad. See, e.g., Application at 34-35. But the Court considered those arguments at the time of Mr. Belan's initial sentencing; they do not change the equation now.

Mr. Belan's arguments regarding his good conduct in prison does not weigh in favor of a change in the sentence at this time. The Court appreciates that Mr. Belan asserts that he is comporting himself well in prison, but, assuming his representations to be true, that does not weigh

substantially enough to justify a reduction in his sentence beyond the benefit of the good time credit that his conduct affords him.

Nor does the fact that Mr. Belan's family would benefit from his presence in terribly troubled times justify a modification of his sentence. Again, the Court assumes that the statements by Mr. Belan's retained counsel regarding his family's circumstances are true. Unfortunately, the consequence of a criminal conviction and sentence is that it separates a defendant from his family. The circumstances of Mr. Belan's family has changed materially since the initial sentencing. At the time of sentencing, the Court stated that "Mr. Belan's mother and his brother now work in real estate and development. It is not fully clear to me how much of that business was funded and remains funded by the proceeds of Mr. Belan's extended theft." Tr. at 28:9-12. Mr. Belan's family members departed from the United States to Ukraine immediately after his arrest and cleared out at least one joint bank account with half a million dollars in it before doing so. PSR at ¶ 94. That was not the only joint account held by Mr. Belan and his family members into which proceeds of the fraud were sent. Id. According to the Government, Mr. Belan's mother and his other family members received proceeds of the fraud and were likely aware of the illicit source of the funds. Id. So at the time of sentencing, the Court understood that Mr. Belan's family was financially comfortable, in part because they benefited from Mr. Belan's fraud. The Court understands that their circumstances have changed dramatically. While the Court could not have anticipated the tragic war in Ukraine, the Court did expect that Mr. Belan's family would not benefit from further support from him during the time of his incarceration. The adverse impact of his separation from them is more significant than at the time of sentencing, but, while the Court emphasizes with Mr. Belan's desire to be with and support them, this factor does not weigh strongly enough to change the balance of the 3553(a) factors.

The Court does not believe that the need for personal or general deterrence have changed materially. As noted, Mr. Belan's retained counsel argues that the nature of the offense reduces the need for personal deterrence. But that argument, and the fact of Mr. Belan's anticipated deportation following his sentence were both considered by the Court at sentencing. See, e.g., Tr. at 31:2-21; 33:14-17. And the need for general deterrence continues to demand a substantial sentence to help prevent the kind of serious, sophisticated crime in which Mr. Belan participated— and from which he gained so much, and his victim has recovered so little.

At this point, with the end of the national COVID-19 emergency imminent and the broad availability of COVID-19 vaccinations, the continued existence of COVID-19 in the prison system, as in the world at large, does not weigh in favor of a modification of the defendant's sentence.

In sum, even considering all of the changed circumstances laid out in Mr. Belan's Application, and accepting his representations regarding them as true, the Court does not believe that a modification of his sentence is appropriate under the 3553(a) factors. Mr. Belan's crime demands a serious sentence; the need for personal and general deterrence remain high. And Mr. Belan's family's changed circumstances and the other factors outlined in the Application do not justify a modification of his sentence.

Any court considering Mr. Belan's Application must keep clearly in mind two things. The first is that the fact that Mr. Belan is an accomplished fabulist, one who was able to spin tales capable of tricking his victim out of over $20 million. The Court noted at sentencing that "Mr. Belan's creativity was not limited to writing fairy tales to his children. Instead, he found the outlet of [w]eaving fantasies to beguile his victim throughout the course of this extended crime." Tr. at 28:22-25. At the time of his initial sentencing, Mr. Belan sought leniency on the basis of a

narrative based on his alleged good works.  The Court addressed that argument at sentencing: "Unfortunately, I have to note that it appears that some of his largess and patronage was paid for with the proceeds of his crime. And from the information presented to me, while he was generous, the things that he paid for . . . do not appear to have required exceptional expenditures of money, but rather relatively modest investments for a man who stole $20 million plus, and who at the time that he was arrested was living in a $7000-a-month apartment in Manhattan.  I do not see Mr. Belan as Robin Hood."  Mr. Belan's new retained counsel has presented a similarly heroic narrative in the Application, which the Court would evaluate with similar skepticism, mindful of the nature of Mr. Belan's crime.

The second is, again, the fact that Mr. Belan stole over $20 million dollars and has not returned even a fifth of that amount to his victim.  In his Application, Mr. Belan's retained counsel complains that Mr. Belan has been unable to obtain a treaty transfer to Ukraine because he has not been able to make restitution payments. Application at 29-31.  The Court does not take a position regarding that application for a treaty transfer or the Department of Justice's allegedly "Kafkaesque" responses to Mr. Belan's application.  However, in evaluating whether Mr. Belan should be released early, the substantial amount of money stolen by Mr. Belan that remains unaccounted for weighs heavily in the Court's evaluation of the 3553(a) factors—particularly in the need to ensure a just punishment for his crime, and the need to ensure adequate personal and general deterrence.

In sum, having considered the 3553(a) factors, the Court concludes that a modification of Mr. Belan's sentence is not appropriate at this time.  A lower sentence than the sentence initially imposed on him would not be consistent with the goals of sentencing.  It would not be just. And it would undermine respect for the law and undermine the deterrent purpose of

7

the original sentence, given Mr. Belan's very serious offense. The Court does not believe that a reduction in the defendant's sentence is appropriate at this time.

    The Clerk of Court is directed to terminate the motion pending at Dkt. No. 58.

    ☐ DENIED WITHOUT PREJUDICE because the defendant has not exhausted all administrative remedies as required in 18 U.S.C. § 3582(c)(1)(A), nor have 30 days lapsed since receipt of the defendant's request by the warden of the defendant's facility.

IT IS SO ORDERED.

Dated:

April 25, 2023                          _____
                                         GREGORY H. WOODS
New York, New York                UNITED STATES DISTRICT JUDGE